## McHargue v. Whitaker, et al.

(Decided December 4, 1917.)

### Appeal from Laurel Circuit Court.

Principal and Surety—Premature Action by Surety Who Has Paid Debt.—Although the surety's right of action against the principal does not accrue until he has paid the debt, the fact that his action is brought before payment will not be reversible error unless it appears that its premature bringing prejudiced the substantial rghts of the principal.

H. C. CLAY for appellant.

REAMS & JCHNSON for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In March, 1912, Ward and Pennington, as principals, and Whitaker and Swaner, as sureties, executed to the First National Bank of Corbin a note for one thousand dollars, and at the same time Ward and Pennington executed to these sureties a mortgage upon some real estate to protect them from loss. After this an insured building on the real estate was destroyed by fire, and Ward, who it seems was the owner of that part of the land on which the house stood, paid on the note four hundred dollars, and then sold his interest in the property pledged to the sureties to Pennington. Thereafter the balance—$600.00—of the thousand dollar note was renewed with Pennington as principal and Whitaker and Swaner as sureties. After several renewals the bank brought suit on the note and obtained a judgment, which was paid by the sureties, shortly after the institution of this suit. A few months before they had paid the debt the sureties brought this suit against Pennington to subject the land conveyed to them as indemnity to the payment of the debt which they had paid, as they alleged, as sureties.

To this suit, McHargue, the appellant, was made a party defendant in view of the fact that he claimed some interest in the land.

It seems that Pennington did not make any defense, but McHargue filed an answer in which he denied that the note had been paid by the sureties or that it was a renewal of the thousand dollar note. He further alleged that when Ward paid the four hundred dollars on the note, Pennington executed his note to the bank for the remaining six hundred dollars, and that he purchased the property from Pennington under an agreement with Pennington, and Whitaker and Swaner as sureties, under which the sureties were to accept a mortgage from Pennington on other land to protect them as sureties and release their lien on the land first conveyed to them as indemnity.

There is no doubt about the fact that Ward paid the four hundred dollars on the one thousand dollar note, or about the fact that after this the note was renewed by Pennington as principal and Whitaker and Swaner as sureties, with Ward's name left off, or about the fact that the sureties paid this renewal note, but not until after this suit was brought.

The first ground for reversal is that the sureties did not pay off this note or have a cause of action against the principal, Pennington, until after the suit was brought, and therefore it is said that the suit was premature.

As McHargue put in issue the right of the sureties to maintain the suit at all and their right to subject the land, we do not see how he was prejudiced by the fact that the suit was brought prematurely when it is now admitted that the sureties did pay off the judgment obtained by the bank on the six hundred dollar note. In addition to this, it seems that judgment had gone against the parties to the note, and the sureties had replevied but not paid the execution before the suit was brought.

In this connection some question is made that the judgment was for $59.24 more than the sureties sought or were entitled to recover. It seems that this $59.24 was costs incurred in the suit brought by the bank, and that it was paid by the sureties when they settled the replevin bond. This is all that need be said as to this item.

The next contention is that when the building on the land conveyed to the sureties as indemnity was destroyed. Ward and Pennington had a settlement between themselves under which Ward paid the four hundred dollars on the bank debt and was to be released from the payment of the balance, and it is said that this agreement between Pennington and Ward not only released Ward

from liability on the one thousand dollar debt, but also released the mortgage executed to these sureties as they were acquainted with the arrangement made between Ward and Pennington.

We cannot agree with counsel that this arrangement between Ward and Pennington operated to deprive the sureties of their lien on this land. They signed the one thousand dollar note and took to protect them from loss on account of it the mortgage. They never released their lien on the land, and the mere fact that one of the principals on the note was left off in renewing it did not affect their right to look to the land for indemnity so long as they remained sureties on the original note or on renewals thereof by either of the principals on the first note. Besides, it appears that before or at the time Ward was left off the note, he sold to Pennington his interest in the land conveyed to the sureties, and as Pennington continued the principal in the note, it is perfectly plain that the sureties had the right to look to the land owned by Pennington for indemnity.

Another contention is that these sureties agreed with McHargue and Pennington that they would release their lien for indemnity on the land conveyed to them for this purpose and take a mortgage to protect them on other land owned by Pennington.

A sufficient answer to this is: First, that the weight of the evidence shows that no such agreement was made; and, second, the sureties did not release their lien on the land, nor did they get a mortgage on any other land to take its place.

The argument, that the change in the note by the dropping off of Ward as principal worked a novation, has been answered by what we have said, and the judgment is affirmed.